# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## NORTHERN DIVISION AT KNOXVILLE

| | | |
|---|---|---|
| SAMUEL JOHN MARRA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:24-CV-11 |
| | ) | VARLAN / POPLIN |
| | ) | |
| CITY OF ROCKY TOP; | ) | JURY DEMANDED |
| ANDERSON COUNTY; | ) | |
| SOUTHERN HEALTH PARTNERS, INC.; | ) | |
| JOHN DOE #1, individually; | ) | |
| JOHN DOE #2, individually; and | ) | |
| JOHN DOE #3, individually, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

## FIRST AMENDED COMPLAINT

---

Plaintiff, Samuel John Marra, through counsel, and for cause of action against these Defendants, respectfully states as follows:

### INTRODUCTION

Mr. Marra's case highlights how the Anderson County criminal justice system fails people suffering from mental illness. Further, Mr. Marra's case demonstrates the clear need for reform in order to ensure that mental illness is treated as a disease, not a crime.

On June 23, 2023, Mr. Marra was in the midst of a mental health crisis on his step-father's property in Rocky Top, Tennessee. Mr. Marra was behaving erratically, and his step-father sought assistance from law enforcement. Despite Mr. Marra showing obvious signs of mental illness, the officers did not call mobile crisis or seek other medical help. Instead, they wrongfully charged Mr. Marra with public intoxication and illegally jailed him at the Anderson County Detention Facility for nearly four days.

On the second day he was in jail, Mr. Marra was beaten and pepper sprayed by two guards because he did not follow their verbal command to clean his cell. Mr. Marra – still experiencing a mental health crisis – had allegedly urinated in his cell and taken his clothes off. He was standing in his cell naked when two guards came in, one of them holding a mop and the shaking a can of pepper spray. Mr. Marra sat on the bench in his cell naked, and after a brief verbal exchange, the first officer pepper sprayed him and began punching Mr. Marra in the head. The officer dragged Mr. Marra to the floor, where both officers beat him, punching his naked body over twenty-five times. Mr. Marra never physically resisted or harmed the officers at any point, but laid in the fetal position on the floor of the cell waiting for the beating to stop. When the officers tired, they dragged Mr. Marra, who was limp from the beating, into a restraint chair, put a bag over his head, and left him in another cell for over an hour without medical attention.

While in custody, Mr. Marra was at his most vulnerable. Officers and medical staff at the jail should have known he was still suffering a mental health crisis. Shortly after the arrest, a family member brought Mr. Marra's prescription Lithium to the jail. Mr. Marra was also drug tested within a day of his arrest and the toxicology results showed no drugs in

his system. If that was not enough, Mr. Marra continued to behave erratically long after any suspected intoxication would have ended. Despite this, Mr. Marra never received a mental health evaluation at any time and remained incarcerated without necessary mental health treatment. Beyond the beating and failure to treat his mental health issues, as discussed more fully below, while Mr. Marra was in jail, medical staff unlawfully and without consent administered sedative injections to Mr. Marra.

Mr. Marra was in custody for almost four days before a friend posted a one-hundred-dollar cash bond on his behalf. As it turns out, the arrest warrant charging Mr. Marra was not filed until the third day of his incarceration. Upon information and belief, Mr. Marra did not appear before a magistrate judge before the filing of the warrant, and he was held without bond on the class C misdemeanor charge of public intoxication for over forty-eight hours. All of the neglect and abuse that Mr. Marra suffered was while he was experiencing a mental health crisis and being held in jail without bond.

The charges against Mr. Marra were ultimately dismissed by the Anderson County District Attorney General's Office because they could not prove the allegations.

This lawsuit is a civil rights, personal injury, and common law tort action arising from the acts, omissions, policies, practices, and culture of Anderson County Detention Facility and its employees, the City of Rocky Top and its employees, the Rocky Top Police Department and its employees, and Southern Health Partners, Inc., its agents, and employees regarding the seizure, arrest and post-arrest treatment of Samuel John Marra on June 23, 2023 through June 26, 2023.

3

Mr. Marra's claims under 42 U.S.C.A. § 1983 arise from Defendants' violation of Mr. Marra's clearly established rights, guaranteed to him under the United States Constitution, including the right to be free from unlawful seizure, excessive force, and cruel and unusual punishment. In the alternative, Mr. Marra's claims under the Tennessee Government Liability Act § 29-20-205 arise from the intentional and negligent conduct of Defendants which caused severe and significant harm to Mr. Marra. Mr. Marra's claims against individual police officers arise from state law torts.

## I.     PARTIES

1.     Plaintiff, Samuel John Marra, is an adult citizen of the United States and the State of Kentucky. Mr. Marra resides at 184 Manly Ave, Vine Grove, Kentucky 40175.

2.     Plaintiff sues Defendants for all damages recoverable under state and federal law.

3.     Defendant City of Rocky Top, Tennessee, is a governmental entity created under the laws of the State of Tennessee. Among its other functions, Defendant operates and maintains a law enforcement agency, the Rocky Top Police Department ("RTPD"). Defendant City of Rocky Top is responsible for ensuring the establishment and enforcement of rules, regulations, policies, practices, procedures, and customs for RTPD. The City of Rocky Top does not have immunity for violating any person's civil rights. The City of Rocky Top is liable for its own conduct and the acts and omissions of its elected officials, employees, agents, and contractors. Defendant City of Rocky Top was, at all times material to this suit, under a duty to operate its policing activities in a lawful manner so as to preserve the peace of the City of Rocky Top and to preserve its citizens the

4

rights, privileges, and immunities guaranteed and secured to them by the Constitution and the laws of the United States. Further, Defendants are not immune from liability for negligent acts pursuant to Tennessee's Government Liability Act.

4. Defendant Anderson County is a governmental entity created under the laws of the State of Tennessee. Among its other functions, Defendant operates and maintains Anderson County Detention Facility ("ACDF"). Defendant Anderson County is responsible for ensuring the establishment and enforcement of rules, regulations, policies, practices, procedures, and customs for ACDF. Anderson County does not have immunity for violating any person's civil rights. The Anderson County is liable for its own conduct and the acts and omissions of its elected officials, employees, agents, and contractors, including Defendants Officer Phillips, John Doe correctional officer #1, John Doe correctional officer #2, and John Doe correctional officer #3. Defendant Anderson County was, at all times material to this suit, under a duty to operate its incarceration facilities in a lawful manner so as to preserve the peace of Anderson County and to preserve its citizens rights, privileges, and immunities guaranteed and secured to them by the Constitution and the laws of the United States. Further, Defendants are not immune from liability for negligent acts pursuant to Tennessee's Government Liability Act.

5. Defendant Southern Health Partners, Inc. ("Southern Health") is a Delaware Corporation and has a principal office at 2030 Hamilton Place Boulevard, Chattanooga, TN 37421. Service may be made upon registered agent C T Corporation System at 300 Montvue Rd, Knoxville, TN 37919-5546.

6. Defendants John Doe correctional officer #1 ("JD #1"), John Doe correctional officer #2 ("JD #2"), and John Doe correctional officer #3 ("JD #3") were at all relevant times correctional officers at ACDF and was acting within the course and scope of their employment as correctional law enforcement officers. At the present time, the name and identity of these persons are not currently known or knowable to the Plaintiff after reasonable inquiry and notice. Therefore, Plaintiff submits he has been diligent in attempting to identify all responsible parties in this action and that the failure to name other potentially responsible parties is through no fault of the Plaintiff.

## II. JURISDICTION AND VENUE

7. This cause of action arises out of a series of events, all of which occurred in Anderson County, Tennessee.

8. Venue lies with this court pursuant to 28 U.S.C.A. § 1391 as all the acts or omissions which give rise to this cause of action occurred within this district, and based on information and belief, all of Defendants are residents of and/or conduct business in this district. Jurisdiction lies with this Court pursuant to federal question jurisdiction, 28 U.S.C.A. §§ 1331 and 1343 based on the claims brought under 42 U.S.C.A. § 1983 and the Fourth, Eighth, and Fourteenth Amendments of the Constitution of the United States of America.

9. This Court may exercise supplemental jurisdiction of Tennessee's Government Tort Liability Act claims pursuant to 28 U.S.C.A. § 1367 because the state claims are so related to the federal claims that they form part of the same case or controversy.

10.     Each and every act of Defendants was performed under the color of state law and by virtue of the constitutions, statutes, ordinances, regulations, policies, customs and usages of the United States of America, the State of Tennessee, the County of Anderson, and the City of Rocky Top, and under the authority of their positions as law enforcement officers for the City of Rocky Top.

11.     All the wrongs complained of herein occurred within this jurisdiction and within the applicable statute of limitations governing this action and this Court holds proper jurisdiction.

## III.     FACTUAL BACKGROUND

12.     Mr. Marra is a thirty-one year old man with a documented history of mental health illness.

13.     In 2016, Mr. Marra was diagnosed with bipolar and minor schizophrenia disorder by Central State Hospital in Louisville.

14.     Mr. Marra has consistently sought treatment to manage his bipolar and minor schizophrenia disorder.

15.     When Mr. Marra was sixteen, he was charged with murder and robbery because he was present when his older brother killed a man while attempting to rob a store.

16.     As a result of his mere presence with his brother, Mr. Marra spent five years in jail and five years on probation in Kentucky.

17.     Because Mr. Marra exhibited good behavior and excelled despite being in prison, Mr. Marra was released from jail early and released onto probation.

18.     Despite his mental health diagnosis, Mr. Mara started and owns Samuel Marra Service, a general contracting company.

19.     Mr. Marra set out to help lead the youths of his community through a local nonprofit organization.

20.     As a program manager, Mr. Marra worked with hundreds of community youths through work training programs where Mr. Marra hired, trained, and coached staff to care for said youths.

21.     Mr. Marra worked with both farms and transitional housing to teach and train children and young adults carry on successful lives.

22.     Mr. Marra taught young adults how to repair houses including laying brick and block, building retaining walls, waterproofing basements, installing siding to houses, and installing gutters and roofing.

23.     In recognition of the injustice of Mr. Marra's criminal sentence and work in the community, Kentucky Governor Steve Beshear appointed Mr. Marra and Mr. Marra served on the State Board for Juvenile Justice from 2014 to 2018.

24.     In June of 2024, Mr. Marra chose to move from Louisville to Tennessee.

25.     When he initially moved to Tennessee, Mr. Marra stayed with his step-father, Richard Dawson, lives at 917 Cooper Drive, Rocky Top, TN 37769.

26.     Mr. Marra planned to stay with Mr. Dawson until the first of July 2023, at which time he would move into a house he had agreed to lease in Anderson County.

27.     On or about June 23, 2023, Mr. Marra performed yard work.

8

28.     Mr. Dawson is a deputy sheriff and works with the Anderson County Sheriff's Department.

29.     On June 23, 2023, Mr. Dawson called the Rocky Top Police Department on Mr. Marra because Mr. Dawson believed Mr. Marra to be intoxicated.

30.     Officer Jackie Phillips, an agent and employee of Defendant City of Rocky Top, responded to the call regarding potential intoxication.

31.     When Officer Phillips arrived at Mr. Dawson's house, Mr. Marra was not intoxicated.

32.     Mr. Marra was experiencing a mental health emergency.

33.     Officer Phillips failed to recognize Mr. Marra's mental state despite the fact that Mr. Marra exhibited clear mental health crisis symptoms.

34.     Officer Phillips did not observe Mr. Marra commit a crime, did not detect the odor of alcohol on Mr. Marra's person, and there was no probable cause to believe Mr. Marra would commit a crime.

35.     It was not proper to arrest Mr. Marra for public intoxication on private property.

36.     It was not proper to take Mr. Marra to ACDF and to incarcerate him there.

37.     On or about June 26, 2023, Officer Phillips signed an affidavit that stated:

On June 23, 2023, at approximately 19:25 P.M., I was
dispatched to 917 Cooper Drive, in reference to a naked male
on the property.  Upon my arrival, I made contact with the
complainant, Richard Dawson, who advised that his stepson,

Samuel John Marra, who is Defendant, lives in Kentucky but showed up at his residence a few days ago and has not been asleep in days. Mr. Dawson advised me that [he] caught Defendant walking around the backyard completely naked in the woods. That is near Lafollette Housing Authority complex, where multiple residents and children frequent. While I was on scene the male was sweating profusely, and appeared to have glossy, bloodshot eyes, and he kept telling me that God wanted him to be naked and kept asking me and Mr. Dawson to take his shorts off, which was the only thing he was currently wearing. For the safety of Defendant and the general public at large, I placed Defendant into custody and he was transported to the Anderson County Detention Facility. This offense occurred in Rocky Top, Anderson County, Tennessee.

38. Mr. Marra disputes the allegations that the affidavit claims God wanted him to be naked and take his clothes off.

39. In the alternative, Mr. Marra's alleged behavior was a clear indication of Mr. Marra's ongoing health crisis and not indicative of intoxication.

40. Officer Phillips had many alternatives to arresting Mr. Marra.

41. In order to address Mr. Marra's obvious mental health crisis, Officer Phillips, could have called the mobile crisis unit, an alternative response to police action.

42. Officer Phillips arrested Mr. Marra on June 23, 2023, and transported Mr. Marra to ACDF.

43. Based on the facts of the affidavit, on June 23 Mr. Marra was arrested for public intoxication pursuant to Tennessee Code Annotated § 39-17-310.

44. Upon information and belief, at or around the time of the arrest, Officer Phillips was informed about Mr. Marra's history of mental health issues either by Mr. Dawson or someone with personal knowledge of Mr. Marra's history.

45. Upon information and belief, Mr. Marra was breathalyzed upon his booking at ACDF, and multiple corrections officers were aware Mr. Marra was not intoxicated by alcohol.

46. Within a few hours of Mr. Marra's arrest, Mr. Marra's uncle brought Mr. Marra's prescription lithium medication to ACDF.

47. ACDF and Southern Health employees were aware of Mr. Marra's mental health condition and his corresponding medication.

48. On June 23 around 10:14 pm, Nurse Kim Ledbetter was called to Booking to evaluate Mr. Marra.

49. Kim Ledbetter is an agent and employee of Southern Health.

50. While Nurse Ledbetter talked to the booking deputies, Mr. Marra removed all his clothes and sat down on the floor of his holding cell.

51. Mr. Marra then stood up and walked to the sink where he began gagging and spit up bright red blood.

52.     Nurse Ledbetter notified the facility MD, and the Southern Health MD ordered 40mg of Protonix and 25mg of Phenergan for Mr. Marra.[1]

53.     Booking deputies and the shift sergeant were notified that Mr. Marra required hospital care for evaluation and a possible toxicology test.

54.     ACDF transported Mr. Marra to Methodist Medical Center at 990 Oak Ridge Turnpike, Oak Ridge, TN 37820 on June 23, 2024.

55.     ACDF transported Mr. Marra back to ACDF and placed Mr. Marra back in a booking cell.

56.     Methodist Medical Center ran a toxicology report on Mr. Marra in the early hours of June 24, 2024.

57.     Mr. Marra tested negative for ethanol, amphetamine, barbiturate, benzodiazepine, buprenorphine, cannabinoid, cocaine, methadone, opiate, oxycodone, and fentanyl.

58.     Methodist Medical Center discharged Mr. Marra on June 24, 2024.

59.     Mr. Marra was not given a mental health evaluation upon arrival or at any other time during his incarceration at ACDF.

60.     On June 24, ADCF correctional officers requested that Mr. Marra clean his cell after Mr. Marra urinated on the door of his holding cell.

61.     Mr. Marra removed all of his clothes and neatly folded them on the bench in his cell.

---

[1] These medications are used to treat nausea, vomiting, and stomach issues.

62. Mr. Marra sat naked in his cell, posing no threat to officer safety while JD #1 and JD #2 entered his cell.

63. As Mr. Marra sat naked in his cell, JD #1 and JD #2 looked at each other while they removed their pepper spray and shook the pepper spray before they began the encounter with Mr. Marra.

64. Instead of contacting Southern Health medical staff or consulting with supervisors, JD #1 and JD #2 approached Mr. Marra who was still seated in the corner.

65. Without provocation, JD #1 pepper sprayed a still seated Mr. Marra in the face and then physically attacked Mr. Marra.

66. After JD #1 punched Mr. Marra in the head, JD #1 and JD #2 forced Mr. Marra to the floor of the cell and continued to punch Mr. Marra although Mr. Marra had not attacked or retaliated against JD #1 and JD #2.

67. JD #1 and JD #2 punched Mr. Marra at least 25 times.

68. JD #3 entered the cell to help restrain Mr. Marra, who was already on the ground and restrained by JD #1 and JD #2.

69. JD #1, JD #2, and JD #3 dragged Mr. Marra out of the cell.

70. JD #1, JD #2, and JD #3 then strapped Mr. Marra's body to a restraint chair and placed a bag over his head.

71. ACDF acted inhumanely in treating an individual suffering from a mental health crisis by pepper spraying such individual, beating such individual, strapping him to a restraint chair, placing a bag over his head, and refusing medical care for at least an hour while he was strapped into the restraining chair.

72.     ACDF officers left Mr. Marra in the chair for over an hour without receiving any water, medical attention, or treatment.

73.     Mr. Marra returned to his holding cell and proceeded to take his clothes on and off and finally rested naked and face down on the bench.

74.     On June 24, around 10:28 pm, the facility MD ordered Mr. Marra to receive a dose of 2mg/ml Lorazepam and a single dose of 50mg Benadryl against Mr. Marra's.

75.     The dose of Lorazepam given to Mr. Marra was administered at the request of the Anderson County Deputies in order to sedate Mr. Marra and without an adequate medical examination regarding the need for the shot.

76.     Mr. Marra previously received 7.5mg po Zyprexa and 600mg po Lithium Carbonate around 9:50 pm on June 24.

77.     ACDF continued to hold Mr. Marra in the booking area against Mr. Marra's will and without a mental evaluation on the basis of public intoxication from his false arrest on June 23, 2023.

78.     On June 25, around 10:25 pm, Nurse Ledbetter administered 2mg/ml Lorazepam and 50mg Benadryl to Mr. Marra, again at the request of the Anderson County Deputies in order to in order to sedate Mr. Marra and without an adequate medical examination regarding the need for the shot..

79.     On June 26, around 12:10 pm, Nurse Carroll Morgan reported to booking to evaluate Mr. Marra because he was sweating, running around the cell naked, and playing jump rope with his pants.

80.     Nurse Carroll Morgan is an agent and employee of Southern Health.

14

81.     On June 26, the fourth day of Mr. Marra's false imprisonment, Nurse Morgan created a mental health alert in Mr. Marra's file on June 26 at 9:24 am.

82.     On January 26, correctional officers told Mr. Marra he would be administered another dose of the psychiatric drug, Lorazepam, one way or another.

83.     Correctional officers forced Mr. Marra to comply by use of threat and Southern Health forced the psychiatric drug Lorazepam into Mr. Marra's body against Mr. Marra's will.

84.     ACDF employees would not allow Mr. Marra to bail himself out.

85.     Mr. Marra was told someone else must bail him out.

86.     On June 26 at 6:36 pm, a family friend bailed Mr. Marra out of ACDF by way of a $100 cash bail.

87.     The arrest warrant charging Mr. Marra with public intoxication was not filed until June 26th.

88.     Upon information and belief, Mr. Marra did not appear before a magistrate judge for at least forty-eight hours after his arrest.

89.     Upon information and belief, Mr. Marra was held without bond on the C-misdemeanor charge of public intoxication for at least forty-eight hours after his arrest.

90.     It was likely longer than forty-eight hours that Mr. Marra was held without bond.

91.     On July 31, 2023, Anderson County district attorney entered a judgment of *nolle prosequi* regarding Mr. Marra's public intoxication charge.

92. Without just cause, without adequate police work, and with a reckless disregard for Mr. Marra's well-being, RTPD falsely arrested Mr. Marra for public intoxication on June 23, 2023.

93. As a result of Mr. Marra's unlawful arrest and detention, Mr. Marra suffered physical pain and continues to suffer mental anguish and emotional pain including anxiety and depression.

94. Mr. Marra suffered and continues to suffer from mental and emotional injuries caused by the unlawful arrest by RTPD Officer Phillips, his unlawful detention, the beating he received at the hands of Anderson County correction officers, including the John Does who are parties to this complain, the failure to diagnose or treat Mr. Marra for a mental health disorder, and the administration of medication against his will and without a proper medical examination.

95. As a result of the unlawful arrest by Officer Phillips of the RTPD, unlawful arrest by RTPD Officer Phillips, his unlawful detention, the beating he received at the hands of Anderson County correction officers, including the John Does who are parties to this complain, the failure to diagnose or treat Mr. Marra for a mental health disorder, and the administration of medication against his will and without a proper medical examination, Mr. Marra is entitled to reimbursement of the reasonable legal expenses he incurred for the legal services he was required to obtain to defend and attempt to clear himself.

## IV. CAUSES OF ACTION AGAINST DEFENDANTS UNDER 42 U.S.C.A. § 1983 UNLAWFUL SEIZURE, FALSE ARREST, AND FALSE IMPRISONMENT IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY DEFENDANTS ANDERSON COUNTY AND THE CITY OF ROCKY TOP

96.     Plaintiff, Mr. Marra, hereby incorporates, in its entirety, each and every paragraph contained in this Complaint by reference as if fully set forth herein.

97.     Mr. Marra was unlawfully seized and falsely arrested for public intoxication by Officer Phillips on June 23, 2023.

98.     Mr. Marra had not committed any violations of Tennessee law that would warrant his arrest, and Mr. Marra was not intoxicated.

99.     Mr. Marra was not in a public place and Mr. Marra was not under the influence of a controlled substance of any other intoxicating substances.

100.    Mr. Marra was not a danger to himself or others and was not unreasonably annoying people in the vicinity.

101.    Officer Phillips did not smell alcohol or the odor of any other controlled substances on Mr. Marra.

102.    Under color of law, Officer Phillips acted recklessly in failing to assess and recognize Mr. Marra's mental health based on Mr. Marra's statements, behavior and other information known to Officer Phillips when he arrested Mr. Marra.

103. Officer Phillips failed to properly identify and respond to Mr. Marra's mental health crises and carry out Mr. Marra's arrest without violating his rights to such a degree that he recklessly disregarded Mr. Marra's constitutional rights.

104. Alternatively, Officer Phillips failed, acting under color of law, to properly identify and respond to Mr. Marra's mental health crises and carry out Mr. Marra's arrest without violating his rights. This failure was to such a degree that Officer Phillips negligently disregarded Mr. Marra's constitutional rights.

105. RTPD, acting under color of law, failed to provide proper oversight and training of officers in properly identifying and responding to mental health crises of citizens and ensuring RTPD training and adopted policies do not violate the rights of citizens.

106. RTPD could have called the mobile crisis unit as an alternative response but chose not to.

107. RTPD Officer Phillips, acting under color of law, failed to effect the arrest of Mr. Marra without violating his rights to such a degree that he recklessly disregarded Mr. Marra's constitutional rights.

108. ACDF detained Mr. Marra for nearly four days for alleged public intoxication based on RTPD's unlawful arrest.

109. As a result of his unlawful seizure by Officer Phillips of RTPD, Mr. Marra suffered a violation of his clearly established rights under the Fourth Amendment to the United States Constitution.

110. As a result of his unlawful seizure by officers of RTPD, Mr. Marra suffered and continues to suffer from pain and mental injuries.

111.	As a result of his unlawful seizure by officers of RTPD, Mr. Marra incurred the cost of medical care and continues to require medical care.

112.	As a result of his unlawful seizure by officers of the RTPD, Mr. Marra suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

## A.	EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY DEFENDANT ANDERSON COUNTY

113.	Plaintiff, Mr. Marra, hereby incorporates, in its entirety, each and every paragraph of this Complaint by reference as if fully set forth herein.

114.	The Fourth Amendment to the United States Constitution protects people from being subjected to excessive force while being arrested or detained by the police.

115.	The amount of force ACDF officers used on Mr. Marra while he was detained at ACDF far exceeded the amount of force a reasonable officer would have used under similar circumstances.

116.	There was no indication that Mr. Marra was armed or posed a threat to ACDF in any way.

117.	Mr. Marra did not resist when ACDF correctional officers beat Mr. Marra.

118.	The physical force applied by ACDF officers while acting under color of law resulted in unnecessary injuries to Mr. Marra.

119.	The physical force applied to Mr. Marra was applied intentionally by ACDF officers.

120.    The physical force used against Mr. Marra exceeded the force justified under any continuous use of force policy.

121.    The actions of the officers of ACDF in pepper spraying, beating and restraining Mr. Marra while he was incarcerated were objectively unreasonable in that excessive force was applied given the totality of the circumstances.

122.    As a result of the excessive force used by officers of ACDF, Mr. Marra suffered a violation of his clearly established rights under the Fourth Amendment to the United States Constitution.

123.    As a result of the excessive force used by officers of ACDF, Mr. Marra suffered and continues to suffer from pain and mental injuries.

124.    As a result of the excessive force used by officers of ACDF, Mr. Marra incurred the cost of medical care and continues to require medical care.

125.    As a result of the excessive force used by officers of ACDF, Mr. Marra suffered and continues to suffer from physical, emotional and mental harm incurred during and after his unlawful seizure including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

**B.    THE CITY OF ROCKY TOP'S AND ANDERSON COUNTY'S POLICIES, INADEQUATE TRAINING AND INADEQUATE SUPERVISION OF POLICE OFFICERS CAUSED THE VIOLATION OF MR. MARRA'S CONSTITUTIONAL RIGHTS**

126.    Plaintiff, Mr. Marra, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

127.    The City of Rocky Top and Anderson County have a duty to adequately train and supervise its police and sheriff's officers in order to protect the rights of the persons with whom those officers interact.

128.    The City of Rocky Top and Anderson County have a duty to adequately train and supervise police officers so that they do not unlawfully seize or use excessive force on the persons with whom they interact.

129.    The City of Rocky Top and Anderson County have or had at the time Mr. Marra's Fourth Amendment rights were violated, policies which failed to protect Mr. Marra from unlawful seizure and arrest.

130.    The City of Rocky Top and Anderson County have failed to adequately train and supervise officers regarding unlawful seizure and the use of excessive force.

131.    The City of Rocky Top and Anderson County have or had at the time of Mr. Marra' Fourth Amendment rights were violated, policies which failed to adequately train and supervise officers regarding proper training to investigate or identify individuals experiencing mental health crises.

132.    The City of Rocky Top and Anderson County's failure to adequately train and supervise police officers in training to ensure law enforcement's mental health crisis response is of an acceptable standard.

133.    RTPD officers did not and/or do not have a policy or training to investigate or identify individuals experiencing mental health crises.

134.    RTPD officers did not and/or do not have a policy or training in place to assure their mental health crisis response is of an acceptable standard.

135.    After this incident, RTPD did not implement a policy or sufficient training to properly investigate or identify individuals experiencing mental health crises, nor did RTPD implement policy or training to ensure their mental health crisis response is of an acceptable standard.

136.    RTPD did not adequately address Officer Phillip's mistake via training or the implementation of new policies.

137.    The failure of the City of Rocky Top and Anderson County to adequately train and supervise police officers proximately caused the violation of Mr. Marra' well-established right to freedom from unlawful seizure, false imprisonment, and the use of excessive force under the Fourth Amendment.

138.    It was foreseeable that the failure to train and supervise police officers would result in misidentification of public intoxication rather than correctly identifying a mental health crisis in an individual.

139.    It was foreseeable that the failure to train and supervise police officers would result in a false seizure, false arrest, and false imprisonment.

140.    It was foreseeable that an unprovoked arrest of an innocent civilian would likely cause mental harm to the innocent civilian.

141.    It was foreseeable that the false arrest would result in Mr. Marra's booking at ACDF.

142.    It was foreseeable that the misidentifying of a mental health crisis episode would result in excessive force applied on an individual.

143.    RTPD police officers, Anderson County and City of Rocky Top policymakers knew about poor jail conditions, understaffing, and excessive force used at ACDF.

144.    Policymakers the City of Rocky Top knew that RTPD police officers would encounter situations where they must decide whether to seize a person and the level of force that is appropriate to apply on detained individuals.

145.    The inability of officers to make appropriate decisions about whether to seize a person and the proper level of force to use while an individual is incarcerated certainly lead to the violation of rights under the Fourth Amendment.

146.    As a result of Anderson County's and the City of Rocky Top's deliberate indifference, Mr. Marra's Fourth Amendment rights to freedom from unlawful seizure and the use of excessive force were violated.

147.    As a result of Anderson County's and the City of Rocky Top's deliberate indifference, Mr. Marra suffered damages including emotional and mental harm incurred during and after his unlawful seizure including fear, physical harm, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

**C.    ANDERSON COUNTY'S POLICIES OR CUSTOMS OF USING EXCESSIVE FORCE AND LACK OF TRAINING WERE THE CAUSE OF AND THE MOVING FORCE BEHIND THE VIOLATION OF MR. MARRA'S CONSTITUTIONAL RIGHTS.**

106.    Plaintiff, Mr. Marra, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

107. Anderson County and ACDF adopted an official policy of falsely imprisoning and using excessive force on incarcerated individuals at ACDF.

108. If not an official policy of Anderson County and ACDF, the custom of using excessive force incarcerated individuals at ACDF became so well-settled and permanent as to have the force of law.

109. If it is not an official policy of the Anderson County and ACDF to encourage these aggressive police encounters, Anderson County and ACDF allowed this pattern of aggressive police encounters to continue and demonstrated municipal acquiescence to the custom.

110. It was reasonably foreseeable that the policy or custom of the Anderson County and ACDF to use excessive force on incarcerated individuals at ACDF would lead to the violation of an individual's constitutional rights, or in other words, the Anderson County's and ACDF's policy or custom was the proximate cause of the violation of Mr. Marra's Fourth Amendment rights to freedom from unlawful seizure, false imprisonment, and freedom from the use of excessive force while incarcerated at ACDF.

111. As a result of Anderson County and ACDF's policy or custom of using excessive force to make an arrest, Mr. Marra suffered damages including the violation of his constitutional rights, freedom from unlawful seizure, freedom from false imprisonment, and freedom from the use of excessive force while incarcerated at ACDF.

112. Anderson County and ACDF adopted an official policy of insufficient, or total lack of, training in assessing, recognizing, and responding to an individual experiencing a mental health crisis.

113.    If not an official policy of Anderson County and ACDF, the custom of failing to train employees in assessing, recognizing, and responding to an individual experiencing a mental health crisis became so well-settled and permanent as to have the force of law.

114.    If it is not an official policy of Anderson County and ACDF, Anderson County and ACDF allowed the failure to train employees in assessing, recognizing, and responding to an individual experiencing a mental health crisis to continue and demonstrated municipal acquiescence to the custom.

115.    It was reasonably foreseeable that the policy or custom of the Anderson County and ACDF to fail in training employees in assessing, recognizing, and responding to an individual experiencing a mental health crisis individuals at ACDF would lead to the violation of an individual's constitutional rights, or in other words, Anderson County and ACDF's policy or custom was the proximate cause of the violation of Mr. Marra's Fourth Amendment rights to freedom from unlawful seizure, false imprisonment, and freedom from the use of excessive force while incarcerated at ACDF.

116.    As a result, Anderson County and ACDF's policy or custom of using excessive force to make an arrest, Mr. Marra suffered damages including the violation of his constitutional rights, freedom from unlawful seizure, freedom from false imprisonment, and freedom from the use of excessive force while incarcerated at ACDF.

117.    As a result of Anderson County and ACDF's policy or custom, Mr. Marra suffered a violation of his clearly established rights under the Fourth Amendment to the United States Constitution.

118. As a result of Anderson County and ACDF's policy or customs, Mr. Marra suffered and continues to suffer from physical pain and mental injuries.

119. As a result of Anderson County and ACDF's policy or custom, Mr. Marra suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure and false imprisonment including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

**E. DELIBERATE INDIFFERENCE OF MR. MARRA'S SERIOUS MEDICAL NEEDS BY ANDERSON COUNTY EMPLOYEES AND SOUTHERN HEALTH MEDICAL STAFF PURSUANT TO THE 14TH AMENDMENT**

120. Plaintiff, Mr. Marra, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

121. Deliberate indifference to the serious medical needs of a pretrial detainee violates Mr. Marra's civil rights pursuant to the 14th Amendment.

122. ACDF employees and Southern Health medical staff, acting under color of law, were deliberately indifferent to Mr. Marra's serious medical needs while Mr. Marra was incarcerated at ACDF.

123. ACDF employees and Southern Health medical staff were aware Mr. Marra's toxicology report indicated Mr. Marra to be free from substances.

124. After ACDF correctional officers pepper sprayed and beat Mr. Marra, they strapped him to a chair and did not provide any medical care or water for over an hour.

125.    Mr. Marra exhibited signs of a mental health crisis on June 23, and a mental health evaluation was never ordered or completed on him while he was incarcerated at ACDF.

126.    It was clear to both ACDF correctional officers and Southern Health medical staff that Mr. Marra required medical attention and not providing the proper medical attention for the four days Mr. Marra was incarcerated constitutes a sufficiently grave deprivation of medical needs.

127.    Both ACDF correctional officers and Southern Health medical staff had a sufficiently culpable state of mind when they denied Mr. Marra proper medical attention for his serious medical needs during his four-day incarceration at ACDF.

128.    Mr. Marra needlessly suffered pain for four days, and relief was available through alternative means of incarceration.

129.    Against his will and with long term, negative side effects, Southern Health nurses injected Mr. Marra on two separate occasions with doses of Lorazepam.

130.    Southern Health MD and nurses knew or should have known the harmful effects Lorazepam can have on an individual.

131.    As a result, Mr. Marra suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure and false imprisonment including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

**F.  CRUEL  AND  UNUSUAL  PUNISHMENT  THROUGH  EXCESSIVE PUNISHMENT PURSUANT TO THE 14TH AMENDMENT**

132.   Plaintiff, Mr. Marra, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

133.   The 14th Amendment Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.

134.   Acting under color of law and holding Mr. Marra in ACDF for four days on a charge of public intoxication is not reasonable.

135.   Holding Mr. Marra in ACDF for four days on a charge of public intoxication for which he tested negative for any intoxicating substances is not reasonable.

136.   Beating Mr. Marra and strapping Mr. Marra in a restraining chair for failing to comply with ACDF employees is unreasonable.

137.   As a result Mr. Marra suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure, false imprisonment, and forced beating including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

**G. DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF THE LAW: UNLAWFUL DETENTION PURSUANT TO THE 14TH AMENDMENT**

138.   Plaintiff, Mr. Marra, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

139.   The Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property without due process of law.

140.    To hold Mr. Marra for four days on a public intoxication charge when clear evidence emerged the night Mr. Marra was arrested which proved Mr. Marra was not intoxicated is punishment of Mr. Marra in violation of his due process rights.

141.    Pre-trial detention that is remedial as distinguished from punitive detention is permissible provided that Mr. Marra was afforded sufficient procedural due process. *United State v. Salerno*, 481 U.S. 739, 751 (1987).

142.    ACDF did not prove by clear and convincing evidence to a neutral decisionmaker that no conditions of Mr. Marra's release could reasonably assure the safety of the community or any person.

143.    ACDF, acting under color of law, held Mr. Marra for four days, injected Mr. Marra, against his will, with two doses of Lorazepam, and physically beat Mr. Marra, despite clear evidence from Medical Methodist Hospital that Mr. Marra was not intoxicated.

144.    As a result Mr. Marra suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure and false imprisonment including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

## H. DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF THE LAW: ADMINISTRATION OF LORAZEPAM VIOLATES 14TH AMENDMENT AND TENNESSEE CONSTITUTION ARTICLE 1, § 8

145.    Plaintiff, Mr. Marra, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

146.    The Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property without due process of law.

147.    Mr. Marra possessed a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs pursuant to the Fourteenth Amendment.

148.    ACDF and Southern Health employees, acting under color of law, forcefully administered at least two doses of Lorazepam to Mr. Marra while he was incarcerated.

149.    Although Mr. Marra suffers from bipolar and schizophrenia, Mr. Marra was not a danger to himself or others.

150.    Further, Lorazepam was not in Mr. Marra's best interest, and the Lorazepam has caused a severe medical reaction within Mr. Marra.

151.    There was no process of law or policy to lawfully allow the Southern Health MD to prescribe the Lorazepam or to allow the Southern Health nurse to administer the Lorazepam against Mr. Marra's will.

152.    Mr. Marra was not medically evaluated prior to forcefully receiving doses of Lorazepam under threat of violence to his person.

153.    As a result, Mr. Marra suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure and false imprisonment including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

**I. DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF THE LAW: LACK OF PROBABLE CAUSE TO ARREST WHEN NO OBSERVABLE OFFENSE COMMITTED**

154.    Plaintiff, Mr. Marra, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

155.    The Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property without due process of law.

156.    On the night of June 23, 2023, Mr. Marra lawfully existed on the property of his step-father, Mr. Dawson.

157.    The arresting officer, Officer Phillips, did not observe Mr. Marra committing any offenses against the laws of Tennessee and the United States.

158.    Based upon the facts of the affidavit Officer Phillips signed, Mr. Marra was clothed with shorts on.

159.    Mr. Marra existed on private property and was not on other public or residential property.

160.    Officer Phillips observed Mr. Marra's mental health crisis, not public intoxication.

161.    The evidence was not sufficient to indicate Mr. Marra was a threat to the public at large or unreasonably annoying to anyone in the vicinity.

162.    As a result, Mr. Marra suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure and false imprisonment

including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

## J. DISCRIMINATION BY A PUBLIC ENTITY AND ITS AGENTS OF AN INDIVIDUAL BASED ON HIS DISABILITY

163. Plaintiff, Mr. Marra, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

164. The Americans with Disabilities Act prohibits a public entity from excluding or denying benefits of the services, programs, or activities of such public entity to a person with a disability based on such disability.

165. Mr. Marra's is a person with a disability and his disability is bipolar disorder and schizophrenia.

166. ACDF is a public entity for purposes of 42 U.S.C.A. § 12132.

167. ACDF, acting under color of law, discriminated against Mr. Marra based on his bipolar and schizophrenia when Mr. Marra was not released from ACDF after his negative toxicology report.

168. ACDF and Southern Health employees discriminated against Mr. Marra based on his bipolar and schizophrenia when they denied him proper medical attention, physically beat Mr. Marra, and injected Mr. Marra with Lorazepam against his will.

169. As a result, Mr. Marra suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure and false imprisonment including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

**V. STATE LAW CLAIMS**

Tennessee's Government Tort Liability Act removes the City of Rocky Top's immunity from suit.

**A. NEGLIGENCE**

106. Plaintiff, Mr. Marra, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

107. Based on the negligent acts of the City of Rocky Top and its agents and employees, and RTP and its agents and employees, and pursuant to Tennessee Code Annotated § 29-20-205, immunity is removed from Defendants.

108. The City of Rocky Top owed a duty to operate its policing activities in a lawful manner so as to preserve the peace of the City of Rocky Top and to preserve to its citizens the rights, privileges, and immunities guaranteed and secured to them by the Tennessee Constitution and the laws of the State of Tennessee.

109. RTPD owed a duty to carry out policework in a lawful manner so as to preserve the peace of the City of Rocky Top and to preserve to its citizens the rights, privileges, and immunities guaranteed and secured to them by the Tennessee Constitution and the laws of the State of Tennessee.

110. Arresting RTPD Officer Phillips owed a duty to carry out policework in a lawful manner so as to preserve the peace of the City of Rocky Top and to preserve to its citizens the rights, privileges, and immunities guaranteed and secured to them by the Tennessee Constitution and the laws of the State of Tennessee.

111.    The City of Rocky Top breached its duty when City of Rocky Top employees failed to adequately identify and respond to an individual experiencing a mental health crisis.

112.    The City of Rocky Top breached its duty when City of Rocky Top employees used excessive force Mr. Marra while Mr. Marra was incarcerated at ACDF.

113.    The use of excessive force by ACDF officers was a substantial factor in and foreseeable cause of the injuries Mr. Marra suffered.

114.    RTPD breached its duty when they failed to provide training to RTPD officers, failed to provide proper oversight of other RTPD officers' work, and failed to implement policy and training to identify individuals experiencing a mental health crisis.

115.    RTPD Officer Phillips breached his duty when he failed to recognize and identify Mr. Marra's mental health crisis.

116.    It was foreseeable that the failure to train and supervise police officers would result in a false arrest and false imprisonment.

117.    It was foreseeable that the failure to train and supervise police officers would result in excessive force applied to incarcerated individuals.

118.    It was foreseeable that an false arrest, false imprisonment, and excessive force used on an innocent civilian would likely cause physical mental harm to the innocent civilian.

119.    It was foreseeable that the false arrest would result in Mr. Marra's booking at the ACDF.

120.    It was foreseeable that holding Mr. Marra for four days for public intoxication and mercilessly beating Mr. Marra while incarcerated would result in injuries to Mr. Marra.

121.    In the alternative, Mr. Marra would not have been injured absent City of Rocky Top's negligence.

122.    As a result, Mr. Marra suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

### B. NEGLIGENT HIRING AND SUPERVISION

123.    Plaintiff, Mr. Marra, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

124.    The City of Rocky Top and ACDF and Anderson County owed a duty to operate its policing activities in a lawful manner so as to preserve the peace of the City of Rocky Top and Anderson County and to preserve to its citizens the rights, privileges, and immunities guaranteed and secured to them by the Tennessee Constitution and the laws of the State of Tennessee.

125.    The City of Rocky Top, Anderson County, and ACDF employees breached their duty when they falsely arrested Mr. Marra, falsely imprisoned Mr. Marra based on public intoxication, failed to recognize and act accordingly to Mr. Marra's mental health crisis, used excessive force on Mr. Marra, unlawfully injected Mr. Marra with Lorazepam against his will, and failed to provide medical care to Mr. Marra during his incarceration.

126.     The City of Rocky Top, Anderson County, and ACDF had knowledge of their employees' unfitness to work for RTPD and ACDF based on previous events.

127.     As a result, Mr. Marra suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

### C. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

128.     Plaintiff, Mr. Marra, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

129.     The actions of officers JD #1, JD #2, and JD #3, while acting under color of law, in holding Mr. Marra for four days for public intoxication and for beating Mr. Marra while incarcerated were negligent.

130.     The actions of officers JD #1, JD #2, and JD #3 for false imprisonment and battery were negligent.

131.     The actions of officers JD #1, JD #2, and JD #3 for false imprisonment and battery have caused Mr. Marra to be diagnosed with anxiety and depression.

132.     Mr. Marra was not previously diagnosed with these mental disorders.

133.     Mr. Marra has been forced to seek treatment for these disorders.

134.     As a result of the negligent actions of officers JD #1, JD #2, and JD #3 Mr. Marra suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

## VII. DAMAGES

As a result of the aforementioned acts and omissions in violation of Mr. Marra's well-established rights under the Fourth Amendment to the United States Constitution and the Tennessee Constitution, the same being a direct and proximate cause of Mr. Marra' injuries and damages, Mr. Marra seeks recovery from Defendants in the amount of not less than One Million Dollars ($1,000,000.00) for damages, including, but not limited to, the following:

        a.  Physical pain and suffering;

        b.  Emotional pain and suffering;

        c.  Actual and future medical expenses;

        d.  Loss of enjoyment of life;

        e.  Loss of wages and earning capacity;

        f.  Attorney fees;

        g.  Punitive damages;

        h.  A declaratory judgment that the policies, practices, or customs of Anderson County Detention Facility, Rocky Top Police Department, and the City of Kingsport complained of herein are illegal and unconstitutional;

        i.  Injunctive relief requiring the Anderson County Detention Facility and all other Tennessee jails to amend policies regarding medical care access to conform to the Constitution of the United States; and

> j.  All such further relief, general and specific, to which Mr. Marra
>
> may be entitled under the facts and circumstances herein.

## VI.  PRAYERS FOR RELIEF

WHEREFORE, PREMISES CONSIDERED:

Mr. Marra sues Defendants, jointly and severally, individually and in their official capacity, and prays for a judgment against Defendants for nominal, compensatory, and punitive damages in the maximum amount allowed by law and for such further general and specific damages, statutory and discretionary costs, post-judgment interest, and such further relief as the Court may find Mr. Marra to be entitled.

Respectfully submitted this 22nd day of March, 2024.

  s/Nathaniel H. Evans
NATHANIEL H. EVANS (BPR # 026292)
THE EVANS LAW FIRM
625 Market Street, Suite 404
Knoxville, Tennessee 37902
(865) 523-2755
nate@evanslawfirm.law

  s/Tyler M. Caviness
Tyler M. Caviness, BPR # 036273
THE LAW OFFICE OF TYLER M. CAVINESS
932 W Forest Blvd
Knoxville, TN 37909
(865) 936-9499
tyler@tylermcavinesslaw.com